UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| | |
|---|---|
| JIMMY DALE PICKETT ) | |
| ) | |
| *Petitioner*, ) | |
| ) | |
| v. ) | No. 4:09-cv-80 |
| ) | *Mattice* |
| ) | |
| DWIGHT BARBEE, Warden, ) | |
| ) | |
| *Respondent*. ) | |

**MEMORANDUM**

This is a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Jimmy Dale Pickett ("petitioner"). The matter is before the court on the respondent's answer to the petition. For the following reasons, the petition for the writ of habeas corpus will be **DENIED** and this action will be **DISMISSED WITH PREJUDICE**.

I.  Standard of Review

A state prisoner is entitled to habeas corpus relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. Under Rule 8 of the Rules Governing Section 2254 Cases In The United States District Courts, the court is to determine, after a review of the answer and the records of the

case, whether an evidentiary hearing is required. If no hearing is required, the district judge is to dispose of the case as justice dictates. If the record shows conclusively that petitioner is not entitled to relief under § 2254, there is no need for an evidentiary hearing and the petition should be denied. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

II.     Factual Background

The respondent has provided the court with copies of the relevant documents as to petitioner's direct appeal and post-conviction proceedings. [Court File No. 25, Notice of Filing Documents, Addenda 1-6]. Petitioner was convicted by a jury in the Circuit Court for Franklin County, Tennessee, of first degree premeditated murder and especially aggravated robbery, and sentenced to life imprisonment and 20 years, respectively; his conviction was affirmed on direct appeal by the Tennessee Court of Criminal Appeals. *State v. Pickett*, No. M2005-02434-CCA-R3-CD, 2007 WL 471136 (Tenn. Crim. App. Feb. 14, 2007).

The Tennessee Court of Criminal Appeals on direct appeal summarized the evidence against petitioner as follows:

> The appellant does not contest the sufficiency of the evidence. Taken in the light most favorable to the State, the evidence at trial revealed that on Tuesday, October 14, 2003, Beverly Searles telephoned the Franklin County Sheriff's Department and reported that her brother, John Harlan Moore, had not reported to work that day and was missing. The next evening, Officer Dustin Foster went to the Pickett farmhouse on Old Salem-Lexie Road and spoke with the appellant. He asked the appellant about Moore, and the appellant gave Officer Foster directions to Moore's trailer. The appellant

2

seemed nervous, and Officer Foster noticed a small yellow Toyota pickup truck parked at the farmhouse.

Officer Foster and another officer drove to Moore's trailer. When they got out of the car, they immediately smelled a decaying body. Officer Foster telephoned Investigator Mike Bell, who told the officers to go into the trailer. The officers pried open the door, went into the trailer's rear bedroom, and found Moore dead in his bed. They immediately left the trailer, secured the scene, and telephoned Investigator Bell.

When Investigator Bell arrived at the scene, he put on a respirator and went into the victim's bedroom. Blood splatter was on the bedroom walls, but a clean sheet covered the victim. Investigator Bell requested help from the Tennessee Bureau of Investigation (TBI) and spoke with Jean Grant, the victim's neighbor. Grant told Investigator Bell that she last saw the victim alive on the Saturday or Sunday morning before officers found his body and that she saw the victim come out of his trailer and walk past her house. The appellant drove by, blew the horn, and the victim got into the appellant's car. The two men then drove back to the victim's trailer. Grant often saw the appellant coming and going from the trailer but did not know if he lived there with the victim. After speaking with Grant and some of the victim's other neighbors, Investigator Bell decided that he needed to speak with the appellant. At 3:00 a.m. on October 16, Investigator Bell and several officers left the victim's trailer and went to the Pickett farmhouse. When they arrived, Investigator Bell knocked on the front door, but no one answered. The officers went to the back door and noticed that it was standing open. The appellant was gone, but a cooler containing ice and beer was in the back of the yellow pickup truck. Officers immediately began searching for the appellant, and surrounding counties sent manpower to help with the search.

On the evening of October 16, a group of officers approached an abandoned tractor trailer rig and found the appellant hiding in the rig's sleeper berth. They arrested him, and Tullahoma Police Department Detective Earl Morse informed the appellant of his rights. Franklin County Sheriff's Department Lieutenant Danny Warren put the appellant into his police vehicle and asked the appellant if he wanted to tell him what had happened to the victim. The appellant said yes and told Lieutenant Warren the following: The victim had been stealing money from the appellant. On Friday, October 10, 2003, the victim stole twenty dollars out of the appellant's wallet. About 7:00 a.m. the next morning, the appellant stood in the doorway of the victim's

3

bedroom and shot the victim with a sixteen-gauge shotgun while the victim was sleeping in bed. After the shooting, the appellant covered the victim with a sheet and took the victim's wallet out of a pair of pants that were on the bed. The appellant took one hundred six dollars out of the wallet, drove to the Speedway Market, and bought beer. The appellant said that he had been planning to kill the victim for at least two weeks.

Lieutenant Warren drove the appellant to Bean's Creek, where the appellant showed him the shotgun he had used to kill the victim and three live shotgun shells. The appellant also told Lieutenant Warren that he had thrown the victim's wallet into a creek in Moore County and that he had consumed antifreeze. Lieutenant Warren drove the appellant to the emergency room at the Southern Tennessee Medical Center (SMTC). The next day, Lieutenant Warren drove to Moore County and found the victim's wallet. The wallet contained the title to a 1981 Toyota pickup in the name of Jeremy Pickett.

Faye Jernigan, a nurse in the emergency room, testified that the appellant did not appear to be intoxicated on the night of October 16. The appellant told her that he drank at least one-half can of antifreeze because he had shot a man with a sixteen-gauge shotgun. The appellant was treated for ingesting antifreeze and was transferred to Vanderbilt Hospital. Franklin County Sheriff's Department Deputy Ricky Summers testified that he sat with the appellant while the appellant was being treated at the SMTC and that the appellant said, "All this treatment for just killing somebody." Two other officers, who were assigned to guard the appellant at the SMTC and Vanderbilt, also testified that the appellant said he killed a man.

After being treated at Vanderbilt, the appellant was transferred to Harton Hospital in Tullahoma. On October 20, TBI Special Agent Kendall Barham visited the appellant in his hospital room, advised the appellant of his Miranda rights, and interviewed him. He took notes during the interview, went to his office and typed out the appellant's statement, and returned to the hospital. The appellant read and signed the statement. According to the statement, the appellant was living with the victim, and the victim was stealing money from him. The appellant got "fed up [and] pissed off" about the victim's stealing and decided that he "would be doing Harlan a favor by killing him." On Saturday, October 11, 2003, the appellant woke up early, saw the victim in the appellant's bedroom, and saw the victim going through the appellant's billfold. The appellant did not say anything to the victim and went back to sleep. He woke up again about 5:30 a.m. and walked to the doorway of the

4

victim's bedroom. The victim was asleep, lying on his back, and was facing toward a window but away from the appellant. The appellant shot the victim, picked up the empty shotgun shell, and covered the victim with a sheet that had been laying on the floor. The appellant carried the victim's pants to the living room and took money out of the victim's wallet. He left the house and drove away in the victim's yellow pickup truck. Agent Barham testified that the police found a pair of pants in the victim's living room and that the appellant appeared truthful.

Forensic Pathologist Charles Harlan performed the victim's autopsy on October 17, 2003, and testified that the victim died of a shotgun wound to the forehead. The victim's body was significantly decayed, and Dr. Harlan stated that the victim had been dead "about a week, give or take a few days." He stated that fluids collected from the victim were not suitable for toxicology tests due to the body's condition. TBI Special Agent Forensic Scientist Shelly Betts examined a plastic shot sleeve, wadding, and nineteen lead pellets recovered from the victim and concluded that they were consistent with a sixteen-gauge shotgun shell. TBI Special Agent Forensic Scientist Robert E. McFadden testified that he found the appellant's fingerprint on a glass jar in the victim's kitchen. He also found the appellant's fingerprint on a beer can and a cigarette pack in the victim's living room.

The appellant's ex-wife testified for the appellant that he was meek, did not have a bad temper, and was not violent. Her current husband testified that he had known the appellant for ten years and had never seen the appellant angry or violent. The jury convicted the appellant of first degree premeditated murder and especially aggravated robbery.

*Id*. at **1-3.

On direct appeal, petitioner raised the following claims:

(1) that he is entitled to a retrial because the State violated the rule of sequestration; (2) that the trial court erred by denying his motions to suppress his confessions; (3) that the trial court erred by allowing the jury to use a transcript, which had not been introduced into evidence, during deliberations; (4) that the trial court erred by refusing to give the jury a corpus delicti instruction; and (5) that the State committed prosecutorial misconduct during closing arguments.

5

*Id*. at *1. The Tennessee Court of Criminal Appeals found no errors that would require reversal and affirmed the convictions. *Id*.

Petitioner next filed a petition for post-conviction relief, which was denied by the trial court, and the Tennessee Court of Criminal Appeals affirmed. *Pickett v. State*, M2008-00990-CCA-R3-PC, 2009 WL 690736 (Tenn. Crim. App. March 17, 2009). In his appeal from the denial of post-conviction relief, petitioner raised the following claims of ineffective assistance of counsel: "trial counsel failed to object to a violation of the rule of sequestration, failed to move to suppress the initial warrantless search of the victim's trailer, and failed to obtain expert testimony in support of the defense theory and to suppress a confession." *Id*. at *1.

In his original petition for habeas corpus relief, petitioner initially listed five general claims for relief, without supporting facts: (1) illegal seizure and arrest; (2) defective indictment; (3) unconstitutional jury instruction; (4) insufficient evidence; and (5) ineffective assistance of counsel. [Court File No. 1, p. 2]. Petitioner subsequently listed another five general grounds for relief, again without supporting facts: (1) cumulative errors by the trial court; (2) verdict based on tainted evidence; (3) violation of the rule of sequestration; (4) ineffective assistance of counsel based upon counsel's failure to prepare and investigate; and (5) defective indictment. [*Id*. at 7-8]. Petitioner then went on to allege 13 pages of grounds for relief, including 20 allegations of ineffective assistance of counsel, prosecutorial

6

misconduct, claims under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and numerous errors on the part of the trial court. [*Id*. at 11-23].

The respondent filed a motion for more definite statement. After noting that most of petitioner's claims were not raised in the State courts and many of his claims were either unintelligible and/or devoid of supporting facts, the court granted the motion for more definite statement. Petitioner was given additional time within which to file an amended petition for the writ of habeas corpus, which he did. [Court File No. 20].

In his amended petition, petitioner alleges the following three grounds for relief: (1) he was denied his Sixth Amendment right to a fair trial before an impartial judge; (2) he was denied the right to a fair trial by the violation of the witness sequestration rule; and (3) defense counsel failed to secure expert testimony to support the defense theory that petitioner's confession was impossible. The respondent contends he is entitled to judgment as a matter of law based upon either procedural default or the findings of the Tennessee state courts.

III.   Procedural Default

The doctrine of procedural default is an extension of the exhaustion doctrine. A state prisoner's petition for a writ of habeas corpus cannot be granted by a federal court unless the petitioner has exhausted his available state court remedies. 28 U.S.C. § 2254. This rule has been interpreted by the Supreme Court as one of total exhaustion. *Rose v. Lundy*, 455 U.S.

7

509 (1982). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. *Picard v. Connor*, 404 U.S. 270 (1971). *See also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (Exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review."). Moreover, the substance of the claim must have been presented as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

Petitioner cannot file another state petition for post-conviction relief. Tenn. Code Ann. § 40-30-102(c). Accordingly, he has no remedy available to him in the Tennessee state courts for challenging his conviction and is deemed to have exhausted his state remedies.

It is well established that a criminal defendant who fails to comply with state procedural rules which require the timely presentation of constitutional claims waives the right to federal habeas corpus review of those claims "absent a showing of cause for the non-compliance and some showing of actual prejudice resulting from the alleged constitutional violation." *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977). *Accord Engle v. Isaac*, 456 U.S. 107, 129 (1982) ("We reaffirm, therefore, that any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief.").

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal

8

> law, or demonstrate that failure to consider the claims will result
> in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).

The court has reviewed the brief petitioner filed on direct appeal. [Addendum 6, Doc. 1, Brief of Appellant, pp. 1-42]. In that brief, petitioner alleged that the trial court erred in denying his motions to suppress his statements based upon a warrantless arrest. [*Id*. at 22-28]. In his amended petition, petitioner makes the conclusory allegation that he was denied his Sixth Amendment right to a fair trial before an impartial judge. [Court File No. 20, Amended Petition, p. 6]. As supporting facts, he refers to his warrantless arrest. [*Id*.]. While petitioner's claim may be related to the claim he raised on direct appeal, that is not sufficient to prevent a procedural default. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("This circuit has held that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court."). Accordingly, petitioner has procedurally defaulted his claim that his right to a fair trial by an impartial judge was violated.

With respect to the alleged violation of the witness sequestration rule, petitioner did raise that issue on direct appeal. [Addendum 6, Doc. 1, Brief of Appellant, pp. 14-20]. The Tennessee Court of Criminal Appeals determined, however, that petitioner waived the issue by failing to object at trial. *State v. Pickett*, 2007 WL 471136 at * 3. "[T]he appellant never

9

alleged at trial that the witnesses violated the Rule, never objected to any of the witnesses' testimony, and never requested a jury-out hearing to determine the facts of the violation or prejudice to the appellant. Therefore, we hold that he has waived these issues." *Id*. at * (citing Tenn. R. App. P. 36(a)). By failing to properly present to the state courts his claim that the witness sequestration rule was violated, petitioner has procedurally defaulted that claim in this court. *See Stanford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001).

In his third and final claim for relief, petitioner alleges that defense counsel failed to secure expert testimony to support the defense theory that petitioner's confession was impossible. [Court File No. 20, Amended Petition, p. 69]. As supporting facts, he refers to the manner in which the victim was killed and claims his confession was physically impossible. [*Id*.].

The court has reviewed petitioner's brief on appeal from the denial of post-conviction relief. [Attachment 6, Doc. 4, Brief of Appellant, pp. 1-15]. Petitioner alleged several instances of ineffective assistance of counsel, including a claim that defense counsel failed to obtain expert evidence to support the trial theories, one of which was that the victim could not have been shot in the manner to which petitioner confessed. [*Id*. at 13-15].

Under the circumstances, and to the extent petitioner alleges that defense counsel failed to secure an expert who could have testified that petitioner could not have shot the victim in the manner he described, the court will consider petitioner's third claim on the

10

merits. With respect to that claim, the respondent contends he is entitled to judgment as a matter of law based on the findings of the Tennessee state courts.

IV.     State Court Findings

Pursuant to 28 U.S.C. § 2254(d), petitioner may not obtain federal habeas corpus relief with respect to a claim that was adjudicated on the merits in a state court proceeding unless the state court decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law or (2) was not reasonably supported by the evidence presented to the state court. In addition, findings of fact by a state court are presumed correct and petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), clarified the distinction between a decision "contrary to," and an "unreasonable application of," clearly established Supreme Court law under § 2254(d)(1). A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id*. at 413. A state court decision "involves an unreasonable application of clearly established Federal law" only where "the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. A federal habeas court may not find a state adjudication to be

11

"unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

V.  Discussion

In *Strickland v. Washington*, 466 U.S. 668 (1984) the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), petitioner must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged

12

action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A finding of serious attorney incompetence will not justify setting aside a conviction, however, absent prejudice to the defendant so as to render the conviction unreliable. *Id*. at 691-92.

In denying post-conviction relief, the trial court found that petitioner failed to demonstrate that defense counsel was deficient in failing to obtain the services of an expert with respect to the way in which the victim was shot:

> The defense claims that the defendant's trial counsel should have secured the services of an expert to support the claim that someone must have shot the victim from the bedroom window. The Court finds that the defense attorney adequately presented and adequately argued this issue at trial. The defense presented no proof that an expert could be obtained to support a claim that the victim was shot from the window. The Court notes that the defendant gave multiple confessions of shooting the victim. The Court also notes that the lead TBI agent over the crime scene response team testified that he opened the subject window from the inside to let the flies out of the victim's bedroom. The Court finds that trial counsel's failure to call an expert on this issue does not reach the level of ineffective assistance of counsel. This claim is without merit.

[Addendum 5, Technical Record of Post-Conviction Proceedings, pp. 81-87, Findings of Fact, Memorandum and Order at 85]. In doing so, the trial court noted the two-part standard of review set forth in *Strickland*. *Id*. at 86 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

The Tennessee Court of Criminal Appeals framed the issue as follows:

> A hearing was held in the post-conviction court at which trial counsel and the Petitioner were the only witnesses. Trial counsel testified that he learned several State's witnesses had out-of-court discussions about whether the window in the victim's bedroom was open or closed in violation of the rule

13

of sequestration. At the time of this initial line of questioning, trial counsel was trying to imply that someone could have shot the victim through the window.

...

On cross-examination, trial counsel verified that Officer McFadden, leader of the TBI Crime Laboratory response team, was one of the last witnesses to testify for the State. According to trial counsel, Officer McFadden was the first witness to have a distinct memory about the window; Officer McFadden testified that the window was closed and that he kicked the screen out in an attempt to lure outside some of the flies that had accumulated in the bedroom. Trial counsel cross-examined Officer McFadden about whether he photographed the scene before or after he altered it. Trial counsel opined that Officer McFadden's testimony was detrimental to the defense theory of the "mystery shooter at the window."

...

When asked about his defense theory that the shooting could not have happened the way the Petitioner described, trial counsel relayed that a large amount of pellets should have come from the shotgun used by the Petitioner. However, only a limited number were recovered from the victim's bedroom, and the glass objects in the room had not shattered. Trial counsel also stated that the blood stain on the victim's wall was unusual because it "appeared to be traveling from the end of the bedroom back to the door." Further, blood appeared in a photograph of the back of the victim's door (although the photograph was not entered into evidence), which would have been incredible if the door had been open as the Petitioner described. Trial counsel admitted that he did not seek the services of a ballistics or blood spatter expert.

...

Trial counsel opined that a ballistics expert would not have benefitted the Petitioner at trial. He also did not think a blood spatter expert would have helped. More importantly, as a matter of "physics," trial counsel tried to establish that the victim's body "could not have moved after being struck, [and] then with the length of that barrel and trying to stand down in such a position with that shotgun tilted in such a way as to get the shot," making the Petitioner's account of events implausible. If he had been able to do so, whether the window was up or down would have "become a moot point...."

14

*Pickett v. State*, 2009 WL 690736 at **4-5.

In analyzing petitioner's claims of ineffective assistance of counsel, the Tennessee Court of Criminal Appeals also noted the two-part standard of review set forth in *Strickland*. *Id*. at **6-7 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The appellate court then rejected petitioner's arguments, including the claim that defense counsel should have sought the services of an expert:

> [T]he record does not preponderate against [the trial court's] findings. The Petitioner did not present any proof to substantiate that, had trial counsel acquired expert assistance in ballistics and blood spatter, this testimony would have supported the defense theory that the victim was shot from angle inconsistent with the Petitioner's confessions.... We cannot speculate as to what evidence further investigation would have yielded.

*Id*. at *11 (citing *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App.1990)). The court also noted that "Officer McFadden distinctly remembered opening the window and kicking out the screen to clear the room of flies that had gathered around the decaying body." *Id*.

This court has reviewed the transcript of petitioner's post-conviction hearing [Addendum 5, Transcript of Post-Conviction Hearing, pp. 1-94] and finds the decision by the Tennessee Court of Criminal Appeals is supported in the record.

Petitioner's trial counsel acknowledged that his trial strategy was to show the killing could not have happened the way petitioner described it in his statements to the investigating officers. [*Id*. at 48]. This was based upon the small number of shotgun pellets recovered from the victim's bedroom, the lack of damage to breakable items in the room, the blood on the back of the door through which petitioner entered the room, and the direction of the blood

15

stains on the wall. [*Id*. at 48-50]. He did not think, however, that a ballistics expert would have been of benefit. [*Id*. at 76]. Nor did he think a blood spatter expert would have been beneficial because it was not possible to prove whether the victim's body remained fixed or moved after the shotgun blast. [*Id*. at 76-78].

Petitioner testified at the post-conviction hearing but did not mention the lack of expert testimony. [*Id*. at 83-94]. No one other than petitioner and his trial counsel testified at the post-conviction hearing. Post-conviction counsel argued in his opening statement that trial counsel should have used the services of expert witnesses to bolster the defense theory. [*Id*. at 4-5]. Nevertheless, there was no proof whatsoever as to what expert assistance, if any, was available to the defense or how beneficial it would have been.

The findings of the state courts are supported in the record and are neither contrary to, nor do they involve an unreasonable application of, federal law as established in *Strickland v. Washington*. Petitioner has failed to demonstrate he received ineffective assistance of counsel under the *Strickland* standard and he is not entitled to relief on this claim.

VI. Conclusion

The petition for habeas corpus relief will be **DENIED** and this action will be **DISMISSED WITH PREJUDICE**. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28

16

U.S.C. § 2253(c); Rule 22(b) of the Federal Rules of Appellate Procedure. The court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure. The court will further **DENY** petitioner leave to proceed *in forma pauperis* on appeal.

**AN APPROPRIATE ORDER WILL ENTER.**

　　　　　　　　　　　　　　　　　　　　*/s/Harry S. Mattice, Jr.*
　　　　　　　　　　　　　　　　　　　　HARRY S. MATTICE, JR.
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE